OPINION *Page 2 
{¶ 1} Defendant-appellant Jackie Levonyak appeals from his conviction of felonious assault, with a firearm specification that was entered in the Mahoning County Common Pleas Court. Multiple issues are raised in this appeal. The first issue is whether trial counsel was ineffective for failing to request an instruction on aggravated assault, an inferior degree offense of felonious assault. The second issue is whether the trial court erred in admitting two photographs of the victim's injuries. The third issue is whether the state presented sufficient evidence to support the conviction for felonious assault. The fourth issue is whether the verdict was against the manifest weight of the evidence. The fifth issue is whether the jury instruction was correct. The sixth issue is whether trial counsel was ineffective in its preparation for the trial. The seventh issue is whether any sentencing error occurred. For all the reasons expressed below, the conviction is hereby affirmed, however, the sentence is vacated pursuant to State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, and the case is remanded for resentencing.
 STATEMENT OF FACTS AND CASE {¶ 2} The testimony shows that on May 14, 2005, Nick Gray, the victim in this case, visited Levonyak's house at 2510 Mount Vernon, Youngstown, four separate times. The first time occurred in the early afternoon when Levonyak was cutting his grass. (Tr. 262). Levonyak and Gray talked about Gray getting his CDL and about a sandbox that Levonyak was going to throw away and that Gray wanted. (Tr. 262).
 {¶ 3} The second time Gray went to Levonyak's house that day was around 4:00 p.m. (Tr. 263). He stopped with his girlfriend to see the sandbox and to look at Levonyak's dog. However, Levonyak was in a hurry because he was taking his son to a baseball game and/or practice. (Tr. 263). Gray and his girlfriend left shortly thereafter.
 {¶ 4} Gray testified that the third time he went there was around 9:00 p.m. and that nobody was home. (Tr. 264). Gray then went out drinking at the Coconut Grove. *Page 3 
At the Coconut Grove, he met up with an acquaintance of his, Thomas Evans. They both went to Levonyak's house around 11:30 p.m. or 12:00 a.m.
 {¶ 5} When Gray and Evans arrived at Levonyak's, Levonyak and his girlfriend Lisa Shaffer were sitting on the front porch. Gray asked Levonyak about the sandbox and about his friend, Rich Stiles', car. Levonyak was keeping Stiles' car while Stiles served time in prison. Gray wanted to see the car and Levonyak would not let him. Gray believed the car was located in Levonyak's garage.
 {¶ 6} According to Gray, they argued for about five minutes, then Levonyak called Gray a "bitch" and pushed him. (Tr. 268). In response, Gray hit Levonyak. (Tr. 268). Levonyak then said he would get the garage door opener. Levonyak went into the house, came out and then said "Now what, bitch?" to Gray. Gray states that Levonyak had a gun and shot him in the abdomen. (Tr. 269). Levonyak then shot Gray a second time in the head causing a flesh wound. (Tr. 272).
 {¶ 7} Evans' testimony was similar to Gray's. He testified that Levonyak pushed Gray and Gray hit Levonyak. He did not testify to any other fighting. He did testify that Levonyak shot Gray.
 {¶ 8} Levonyak's version of the events differs slightly. Levonyak testified that when Gray arrived at midnight with Evans, Gray did not say anything about the sandbox, instead he just asked about the Stiles' car. (Tr. 462). Levonyak told Gray he could not see the car unless Stiles sent Levonyak a letter or called him and indicated that Gray could see the car. (Tr. 462). Levonyak then told Gray to leave. (Tr. 462). Levonyak claims Gray then threatened him saying things like don't make me come back here again and that he would burn the house down. (Tr. 463). Gray also asked Levonyak why he was disrespecting Gray. (Tr. 464). Levonyak then claims that they got into a scuffle. Levonyak stated that Gray had him cornered and was hitting him. Levonyak had a gun on him, tucked into his waistband. Levonyak stated he was scared for himself and he thought the gun would scare Gray so he drew it. Gray and Levonyak continued to fight and Levonyak shot Gray twice.
 {¶ 9} Levonyak's girlfriend, Shaffer, testified that Gray and Levonyak argued over Stiles' car. She stated that Gray did punch Levonyak, however, once the fight *Page 4 
started she went inside and locked the door. She could not testify as to whether there was an actual fistfight.
 {¶ 10} On June 3, 2004, Levonyak was indicted for one count of attempted murder, a violation of R.C. 2923.02(A) with a firearm specification and one count of felonious assault, a violation of R.C.2903.11(A)(2), with a firearm specification.
 {¶ 11} At trial, Levonyak argued self-defense. The jury found him not guilty of attempted murder, however, he was found guilty of felonious assault and the firearm specification. Levonyak received a three year sentence for the felonious assault conviction and three years for the firearm specification. The sentences were ordered to be served consecutive to each other.
 {¶ 12} Levonyak appeals from his conviction and sentence. Counsel represents Levonyak on appeal and filed a brief on Levonyak's behalf. This court also accepted Levonyak's pro se brief. Both briefs and arguments are considered.
 COUNSEL'S BRIEF FIRST ASSIGNMENT OF ERROR {¶ 13} "LEVONYAK'S COUNSEL WAS INEFFECTIVE FOR NOT REQUESTING A CHARGE OF AGGRAVATED ASSAULT.
 {¶ 14} Levonyak was charged with felonious assault and the jury was instructed on the elements of felonious assault. Levonyak now argues trial counsel was ineffective for failing to request an instruction on aggravated assault.
 {¶ 15} The standard of review for a claim of ineffective assistance of counsel is well known and was set out in the United States Supreme Court case Strickland v. Washington (1984), 466 U.S. 668. A court must indulge in a strong presumption that counsel's performance fell within the wide range of reasonable professional assistance. Appellant bears the burden to demonstrate that counsel's performance fell below an objective standard of professional competence. If successful in demonstrating that counsel committed professional errors, appellant then must demonstrate a reasonable probability that the result of the trial would have been otherwise. Id. at 694.
 {¶ 16} Felonious assault, as defined, states that, "no person shall knowingly * * * cause or attempt to cause physical harm to another." R.C. 2903.11(A)(2). Aggravated assault, as defined, states that "no person while under the influence of *Page 5 
sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause or attempt to cause physical harm to another." R.C. 2903.12(A)(2). As is shown by the definition of these two crimes, aggravated assault contains a mitigation element (passion, provocation) that felonious assault does not.
 {¶ 17} As such, aggravated assault is not a lesser included offense of felonious assault. Rather, as is shown by the elements of the two offenses, it is an inferior degree offense. State v. Deem (1988),40 Ohio St.3d 205, 210; State v. Courtney, 8th Dist. No. 86914,2006-Ohio-4264; State v. Huff, 4th Dist. No. 06CA7, 2006-Ohio-5081;State v. Jordan, 11th Dist. No. 2005-T-0049, 2006-Ohio-3425; State v.Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136.[1]
 {¶ 18} Nevertheless, the trial court could have given an instruction on the inferior offense of aggravated assault, if requested, if there was evidence presented at trial by which a jury could reasonably acquit the defendant for the principal crime charged, yet convict on the inferior offense. Deem, 40 Ohio St.3d 205, paragraph four of the syllabus; State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus; State v. Jacks (1989), 63 Ohio App.3d 200, 205.
 {¶ 19} Trial counsel, however, did not request an instruction on the inferior degree offense of aggravated assault. Yet, the failure to request an instruction on an offense of an inferior degree can be a matter of trial strategy. State v. Walker (June 26, 2000), 4th Dist. No. 99CA2494. When a defendant puts on a defense of self-defense, an instruction on the inferior degree offense could have been perceived by the jury as contradictory to the self-defense theory. State v.Sander (May 17, 2000), 9th Dist. No. 19783. It could confuse the jury to argue that defendant acted in fear for his life but also was provoked and acted in a fit of rage. Id. Thus, it is a trial strategy for counsel to choose to go solely with the self-defense theory and not request an inferior degree offense. Id. Trial strategies, even debatable ones, do not constitute *Page 6 
ineffective assistance of counsel. State v. Leonard, 104 Ohio St.3d 54,2004-Ohio-6235, ¶ 146. Thus, for that reason alone, we cannot find that trial counsel was ineffective for failing to request an instruction on the inferior degree of aggravated assault.
 {¶ 20} Furthermore, regardless of the above, the record does not justify the conclusion that an instruction on aggravated assault was warranted. In order to warrant an aggravated assault instruction, the evidence was required to sufficiently demonstrate serious provocation.Deem, 40 Ohio St.3d 205, paragraph four of the syllabus; Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136. "To be serious, the provocation must bring on extreme stress and be reasonably sufficient to incite the defendant into using deadly force." Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136, citing, Deem, 40 Ohio St.3d 205, at paragraph 5 of the syllabus. Levonyak did not testify he was upset. He testified he was scared and that he used the gun to save his life. Evidence admitted at trial did show that at least one punch was exchanged between Levonyak and Gray. There was also evidence that, if believed, could show that Levonyak and Gray had a big fistfight. However, that is not enough to show serious provocation. See Combs, 5th Dist. No. 2001CA00222, 2002-Ohio-1136.
 {¶ 21} In conclusion, trial counsel was not ineffective for failing to request an inferior degree instruction. The decision to request the inferior degree instruction was trial strategy, which will not be second guessed. State v. Adams, 103 Ohio St.3d 514, 2004-Ohio-5845, ¶ 31. Furthermore, at best, it is questionable whether the evidence would have supported an inferior degree instruction. Thus, for those reasons this assignment of error lacks merit.
 SECOND ASSIGNMENT OF ERROR {¶ 22} "THE TRIAL COURT ERRED WHEN IT ALLOWED THE JURY TO VIEW PHOTOGRAPHS OF GRAY'S INJURIES."
 {¶ 23} Levonyak argues that photographs of Gray's injuries were graphic, unnecessary, and prejudicial. The two photographs he is arguing about were photographs of Gray's head and abdomen. Counsel did not object to the admission of the photographs. *Page 7 
 {¶ 24} Evid.R. 403(A) provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. The admission of photographs is left to the sound discretion of the trial court. State v. Robb, 88 Ohio St.3d 59, 71, 2000-Ohio-275. However, we review these photographs under a plain error analysis since counsel failed to object to the admission of the photographs. State v.Abner, 2d Dist. No. 20661, 2006-Ohio-4510, at ¶ 103 (reviewing the admission of the photographs under a plain error analysis because trial counsel failed to object.).
 {¶ 25} In State v. Morales (1987), 32 Ohio St.3d 252, the Ohio Supreme Court addressed the standard for determining the admissibility of photographs in a noncapital case.
 {¶ 26} "When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. See State v. Tnger (1972),31 Ohio St.2d 100, 103-104; State v. Rahman (1986), 23 Ohio St.3d 146, 152." Id.
 {¶ 27} However, "the mere fact that a photograph is gruesome or horrendous is not sufficient to render it per se inadmissible."State v. Maurer (1984), 15 Ohio St.3d 239, 265. Gruesome photographs are admissible if they assist the fact-finder in determining the issues or are illustrative of witness testimony and forensic evidence without causing material prejudice. Id. at 266.
 {¶ 28} The photographs in this case are of the injury to Gray's abdomen and the injury to his head. The photograph of Gray's abdomen is not specifically of a bullet hole but rather is a photograph of his abdomen opened and shows the extent of the damage the shooting caused to that area of his body. The photograph of his head shows what looks like a flesh wound with some dried blood (which possibly shows a bullet hole).
 {¶ 29} Clearly, the photographs were not repetitive. They are the only two photographs of the injuries and each photograph shows a different injury. As to gruesomeness, the photograph of the head wound is not gruesome at all, however, the picture of the abdomen wound is somewhat gruesome. Nonetheless, as stated *Page 8 
above, the gruesome nature of a photograph that does not render the photograph inadmissible per se. Id. at 265.
 {¶ 30} The photographs of the abdomen and the head were being used to corroborate the testimony of the doctor and of Gray about the wounds that the gunshots caused. The photographs assisted the trier of fact. Thus, weighing the probative value against any unfair prejudice, it cannot be concluded that the unfair prejudice outweighs the probative value. This is especially the case, because it cannot be found that the jury was influenced by the photographs given that they found Levonyak not guilty of attempted murder.
 {¶ 31} Consequently, the admission of the photographs did not amount to an abuse of discretion, let alone plain error. This assignment of error has no merit.
 THIRD ASSIGNMENT OF ERROR {¶ 32} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION."
 {¶ 33} Levonyak argues that the state presented insufficient evidence to support the conviction. His argument is based primarily upon his belief that he acted in self-defense.
 {¶ 34} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259 (overruled on other grounds).
 {¶ 35} Levonyak was found guilty of felonious assault with a gun specification. As stated above, felonious assault as defined by R.C.2903.22(A)(2) stated that no person shall knowingly cause or attempt to cause physical harm to another.
 {¶ 36} The testimony at trial established that Levonyak shot Gray; Gray, Evans and Levonyak testified to this. Gray and Dr. Ranson testified that the gunshot wound caused physical harm to Levonyak. Furthermore, shooting a gun in a place where there is a risk of injury to a person can support a finding that a person acted "knowingly" for purposes of felonious assault. State v. Salinas (1997), *Page 9 124 Ohio App.3d 379, 390, citing State v. Gregory (1993), 90 Ohio App.3d 124;State v. Phillips (1991), 75 Ohio App.3d 785.
 {¶ 37} Thus, when viewed in the light most favorable to the state, it is clear that it provided evidence to support every essential element of the offense. As such, there was sufficient evidence produced.
 {¶ 38} Levonyak's self-defense argument is not addressed at this point because the argument that the affirmative defense of self-defense was proven is irrelevant to a sufficiency argument. In a sufficiency argument, this court is reviewing whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt. Self-defense is an affirmative defense that must be proven by the defendant. Proving self-defense does not negate an element of the offense, rather, it acts as a defense for committing the elements of the offense. Thus, arguing that a defendant proved self-defense is not an argument that should be made in reference to a sufficiency argument.
 {¶ 39} As the Tenth Appellate District has explained:
 {¶ 40} "A review for sufficiency of the evidence does not apply to affirmative defenses, as such a review does not consider the strength of defense evidence. State v. Jennings, Franklin App. No. 05AP-1051,2006-Ohio-3704. The due process `sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.' Id. ¶ 28, quoting State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 37, quoting Caldwell v. Russell (C.A.6, 1999), 181 F.3d 731. A sufficiency review is applied to the substantive elements of the crime as state law defines them. Jackson v. Virginia (1979), 443 U.S. 307. Under Ohio law, self-defense is an affirmative defense. State v. Calderon, Franklin App. No. 05AP-1151, 2007-Ohio-377, citing State v. Williford (1990),49 Ohio St.3d 247. Accordingly, a review for sufficiency of the evidence is not implicated because self-defense does not involve the substantive elements of [the crime charged]." State v. Harrison, 10th Dist. No. 06AP-827, 2007-Ohio-2872, ¶ 23. *Page 10 
 {¶ 41} As such, Levonyak's self-defense argument is not addressed under this assignment of error. However, we will address it under the next assignment of error, which argues that the conviction is against the manifest weight of the evidence. For the reasons stated above, this assignment of error lacks merit.
 FOURTH ASSIGNMENT OF ERROR {¶ 42} "THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 43} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175. If we find that the factfinder clearly lost its way, we must reverse the conviction and order a new trial. Id.
 {¶ 44} Levonyak claims that the conviction is against the manifest weight of the evidence because he proved that he acted in self-defense. As aforementioned, self-defense is an affirmative defense. "To establish self-defense, a defendant must prove * * * (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v.Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 72, quoting State v.Barnes, 94 Ohio St.3d 21, 24, 2002-Ohio-68, citing State v. Robbins
(1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 45} Gray and Levonyak have different versions of what occurred that night. Levonyak testified that Gray arrived at his house drunk with Evans, whom Levonyak did not know and it looked like to him that Gray was bringing "muscle". He testified that Gray hit him multiple times, threatened to burn his house down later, and called him names. He stated he was afraid for his life. Levonyak explained that he had known Gray for a little while and during that time Gray had told Levonyak that Gray *Page 11 
liked violence and liked beating people up. In fact, Gray had told Levonyak he killed someone. In addition to his testimony, Levonyak offered photographs of what his face looked like a couple days after the shooting. The photographs show Levonyak as having two black eyes, some scrapes on his face and a split lip. In all, his testimony was trying to establish that given the situation and what he had known about Gray that he was acting in self-defense.
 {¶ 46} Shaffer, Levonyak's girlfriend, confirmed that Gray and Levonyak were arguing that night. She also testified that Gray hit Levonyak, but she could not confirm that there was a major fistfight between the two. She did testify that when she saw Levonyak a couple days after the fight that his face looked like what was shown in the photographs.
 {¶ 47} Gray testified that he had been drinking that night when he arrived at Levonyak's house and that he arrived with Evans. Gray claimed that Levonyak called him a name and pushed him. Gray testified that he punched Levonyak. He indicated that was the only punch thrown that night. Gray then testified that Levonyak shot him. Evans' testimony coincided with Gray's testimony.
 {¶ 48} If Gray's testimony is believed, a jury could determine that Levonyak's act of shooting Gray twice did not amount to self-defense. In a self-defense case, the degree of force permitted depends upon what isreasonably necessary to protect that individual from the imminent use of unlawful force. Akron v. Dokes (1986), 31 Ohio App.3d 24, 25. Gray's testimony was that he punched Levonyak and then Levonyak shot him. Shooting someone who calls you a name and punches you once is more force than is reasonably necessary to protect ones' self. This is especially the case when the person is unarmed. However, if the jury believed Levonyak's testimony, then possibly it could be concluded that the force used by Levonyak was reasonably necessary.
 {¶ 49} As is shown above, we have two different versions of the events that occurred between Gray and Levonyak. One version clearly would not support self-defense, while the other version could possibly support it. From our review of the record, neither version is more believable than the other. Thus, it was a credibility question for the jury to determine. In determining whether a judgment is against the *Page 12 
manifest weight of the evidence, a court of appeals must "be guided by a presumption that the findings of the trier-of-fact were indeed correct."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. The rationale for giving such deference to the findings of the trial judge or jury is that they are "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80.
 {¶ 50} Thus, given the evidence, we cannot find that the verdict was against the manifest weight of the evidence. This assignment of error lacks merit.
 PRO SE BRIEF FIRST ASSIGNMENT OF ERROR {¶ 51} "THE TRIAL COURTS JURY INSTRUCTION INVADED THE PROVINCE OF THE JURY AND DENIED APPELLANT A FAIR TRIAL UNDER THE DUE PROCESS CLAUSE OF THE FEDERAL CONSTITUTION."
 {¶ 52} Under this assignment, Levonyak makes multiple arguments. The first two arguments concern jury instructions.
 {¶ 53} It is well-settled that a criminal defendant is entitled to a complete and accurate jury instruction on all issues raised by the evidence. State v. Williford (1990), 49 Ohio St.3d 247, 251. When reviewing the trial court's jury instructions, we must view the instructions in their totality, if the law is clearly and fairly expressed, a reviewing court should not reverse a judgment. Margroff v.Cornwell Quality Tools, Inc. (1991), 81 Ohio App.3d 174, 177; Yeager v.Riverside Methodist Hosp. (1985), 24 Ohio App.3d 54, 55. The jury instructions must be considered as a whole and a single portion of the instruction should not be viewed in isolation. State v. Jalowiec,91 Ohio St.3d 220, 231, 2001-Ohio-26.
 {¶ 54} The first argument Levonyak makes is that the trial court failed to "instruct the jury on the claim of self-defense presented by the appellant and the credibility of the victim who incited the provocation under this diminished mental state of mind under the influence of alcohol."
 {¶ 55} First, it must be pointed out that both the state and Levonyak are under the incorrect belief that the trial court did not instruct the jury on self-defense. A self-defense instruction was given. (Tr. 594-599, 603-604). Furthermore, in instructing on self-defense, the court went through the three elements of self-defense, i.e. (1) that the *Page 13 
defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger. (Tr. 596). See Barnes, 94 Ohio St.3d at 24, 2002-Ohio-68.
 {¶ 56} The instruction even provided the law on the duty to retreat and the degree of force needed to repel an attack. (Tr. 597-598). The instruction as a whole, regarding self-defense, read as follows:
 {¶ 57} "The Defendant is asserting an affirmative defense known as self-defense. The burden of going forward with the evidence of self-defense and the burden of proving an affirmative defense are upon the Defendant. He must establish such a defense by a preponderance of the evidence.
 {¶ 58} "Preponderance of the evidence is the greater weight of the evidence. That is, evidence that you believe because it outweighs or overbalances in your mind the evidence opposed to it. A preponderance means evidence that is more probable, more persuasive or of greater probative value. It is the quality of the evidence that must be weighed, and quality may or may not be identical with the quantity or the greater number of witnesses.
 {¶ 59} "In determining whether or not self-defense has been proved by a preponderance of the evidence, you should consider all of the evidence, bearing upon the issue of self-defense, regardless of who produced it. If the weight of the evidence is equally balanced, or if you are unable to determine which side of an affirmative defense has the preponderance, then the Defendant has not established the affirmative defense.
 {¶ 60} "If the Defendant fails to establish the defense of self-defense, the State still must prove to you beyond a reasonable doubt, all of the elements of the crime of attempted murder or felonious assault respectively. To establish self-defense, the Defendant must prove he was not at fault in creating the situation giving rise to the shooting of Nick Gray, and he had reasonable grounds to believe and a[n] honest belief that he is in immediate danger of death or great bodily harm, and that his only *Page 14 
means of escape from such danger was by the use [of] deadly force, and he had not violated any duty to retreat to avoid the danger.
 {¶ 61} "The Defendant had a duty to retreat if either he was at fault in creating the situation giving rise to the shooting of Nick Gray, or if he did not have reasonable grounds to believe and a[n] honest belief that he was in immediate danger of death or great bodily harm, and that his only means of escape from that danger was by the use of deadly force.
 {¶ 62} "If the Defendant was assaulted in his home, then the Defendant had no duty to retreat and could use such means as are necessary to repel the assailant from the home, or to prevent any forcible entry to the home, even to the use of deadly force, provided that the Defendant had reasonable grounds to believe, and an honest belief, that the use of deadly force was necessary to repel the assailant or to prevent the forcible entry.
 {¶ 63} "Words alone do not justify the use of deadly force. Resort to such force is not justified by abusive language, verbal threats or other words, no matter how provocative. In deciding whether the Defendant had reasonable grounds to believe, and a[n] honest belief that he was in immediate danger of death or great bodily harm, you must put yourself in the position of the Defendant with his characteristics and his knowledge or lack of knowledge under the circumstances, and conditions that surrounded him at the time. You must consider the conduct of Nick Gray and decide if his acts and words caused the Defendant reasonably and honestly to believe that he was about to be killed or receive great bodily harm.
 {¶ 64} "The law does not measure nicely the degree of force which may be used to repel an attack. However, if the Defendant used more force than reasonably appears to be necessary under the circumstance, and if the force used is so greatly disproportionate to his apparent danger as to show an unreasonable purpose to injure Nick Gray, then the defense of self-defense is not available.
 {¶ 65} "* * *
 {¶ 66} "Again, the Defendant is asserting the affirmative defense of self-defense, which has been defined for you above. The very same legal definition and *Page 15 
the very same burden of proof apply to this claim of self-defense, as I described for you previously.
 {¶ 67} "If you find that the State failed to prove beyond a reasonable doubt that the Defendant knowingly caused or attempted to cause physical harm to Nick Gray by means of a deadly weapon or dangerous ordnance, then you must find the defendant not guilty of felonious assault.
 {¶ 68} "If you find that the State proved beyond a reasonable doubt that the Defendant knowingly caused or attempted to cause physical harm to Nick Gray by means of a deadly weapon or dangerous ordnance and that you find the Defendant failed to prove by the greater weight of the evidence that he acted in self-defense, then you must find the Defendant guilty of felonious assault.
 {¶ 69} "If you find that the State proved beyond a reasonable doubt that the Defendant knowingly caused or attempted to cause physical harm to Nick Gray by means of a deadly weapon or dangerous ordnance, but you also find that the defendant proved by the greater weight of the evidence that he acted in self-defense as described above, then you must find the Defendant not guilty of felonious assault." (Tr. 594-604).
 {¶ 70} This instruction adequately explains the law on the affirmative defense of self-defense. Thus, we cannot find any error with the instruction.
 {¶ 71} Levonyak seems to argue that the trial court should have also given some instruction concerning Gray's level of intoxication. The trial court did not give a specific instruction on Gray's intoxication. However, there was evidence submitted during trial that Gray had alcohol in his system. Dr. Ranson, the surgeon at St. Elizabeth's, testified that the level of intoxication was "pretty high" and stated that it was .171. (Tr. 205). Furthermore, Gray testified he was drinking. (Tr. 294-295).
 {¶ 72} As is shown above, the trial court instructed the jury to consider the conduct of Nick Gray in determining whether self-defense occurred. Furthermore, a general instruction to the jury was to consider all of the evidence when determining whether Levonyak was guilty. The testimony regarding Gray being intoxicated was evidence. The jury was free to consider how that would affect Gray and his conduct. *Page 16 
Thus, we can find no error with the trial court's failure to give a specific instruction on Gray's level of intoxication.
 {¶ 73} Consequently, there was no error with the self-defense instruction. Thus, this argument has no merit.
 {¶ 74} The second argument Levonyak makes under this assignment of error is that the trial court gave an improper instruction on the mens rea of "knowingly." For a felonious assault conviction, the offender must act knowingly in causing or attempting to cause physical harm to another by means of a deadly weapon. Thus, "knowingly" is an element of the offense.
 {¶ 75} The trial court instructed on the mens rea of "knowingly." (Tr. 602).
 {¶ 76} "A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances." (Tr. 602).
 {¶ 77} The first two sentences of this instruction are a verbatim recitation of the language in R.C. 2901.22(B) that defines the word "knowingly". We cannot find any error with this instruction. State v.Gould (1994), 95 Ohio App.3d 634, 637.
 {¶ 78} Next, Levonyak argues that the prosecutor made an "improper characterization of defense's witness testimony." Levonyak does not comply with the appellate rules in that he fails to cite this court to the record where this alleged improper characterization occurred. App.R. 16(A)(6) and (D). It is assumed that he is referring to statements made during closing arguments. In the closing argument, the prosecutor discussed the evidence and Levonyak's self-defense claim. The prosecutor suggests that Levonyak did not act like a man who acted in self-defense.
 {¶ 79} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. SeeState v. Tumbleson (1995), 105 Ohio App.3d 693, 699. Furthermore, a prosecutor may freely comment on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom.State v. Lott (1990), 51 Ohio St.3d 160, 165. *Page 17 
 {¶ 80} In this case, we hold that the prosecutor's statements during closing arguments were comments of what the evidence showed and what reasonable inferences he believed that evidence showed. Here, according to the prosecutor, the evidence showed that Levonyak did not act in self-defense. Thus, the prosecutor's comments did not deprive Levonyak of a fair trial. This argument has no merit.
 {¶ 81} Next, Levonyak raises issues with the photographs that were admitted into evidence. This is a reiteration of counsel's argument made under the second assignment of error. Thus, for the reasons expressed under that assignment of error, there is no merit to Levonyak's pro se argument.
 {¶ 82} Lastly, Levonyak claims under this assignment of error that an instruction on aggravated assault should have been given. This argument is also a reiteration of appointed counsel's argument under the first assignment of error. Accordingly, as there was no merit with that assignment of error, there is no merit with this argument. None of the arguments made under this assignment of error are meritorious.
 SECOND ASSIGNMENT OF ERROR {¶ 83} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL CONDUCTED NO PRETRIAL DISCOVERY, OTHER CUMULATIVE EFFECTS AND FAILED TO FILE A TIMELY SUPPRESSION MOTION AGAINST STATE'S EVIDENCE IN VIOLATION OF SIXTH AND FOURTEENTH AMENDMENTS OF U.S. CONSTITUTION."
 {¶ 84} Under this assignment of error, Levonyak claims counsel was ineffective because trial counsel was not adequately prepared for trial, did not consult with Levonyak, failed to file a suppression motion, and failed to request an instruction on self-defense.
 {¶ 85} As stated above, Strickland, 466 U.S. at 694, sets forth the standard for reviewing an ineffective assistance of counsel claim: (1) it must be demonstrated that counsel's performance fell below an objective standard of professional competence and (2) that there is a reasonable probability that the result of the trial would have been otherwise.
 {¶ 86} The first argument concerns trial counsel's pretrial investigation; Levonyak contends that trial counsel should have investigated and gathered evidence, *Page 18 
including eye-witness accounts. He claims that "these witnesses were to impeach the state's witnesses account of the event of May 2004." However, his allegation goes no further than that. It is unclear whether there were any other eye-witnesses and what exactly their testimony would have been.
 {¶ 87} Furthermore, the record does not support the conclusion that trial counsel did not adequately investigate the incident. Levonyak was not the only person to testify on his behalf as to what occurred that night; Lisa Shaffer also testified on his behalf. Additionally, as the state points out, a journal entry dated June 28, 2004, indicates that counsel retained the services of a private investigator to serve subpoenas. This indicates that trial counsel was doing some pretrial investigating. As nothing in the record indicates that the pretrial investigation was inadequate, this argument fails.
 {¶ 88} Levonyak's second argument under this assignment of error is that the trial court did not consult with him regarding trial strategy. While counsel must consult with his client on important trial decisions, great latitude is afforded in matters of trial strategy. State v.Smith (1985), 17 Ohio St.3d 98, 101. In seeking to prove his counsel's ineffectiveness, Levonyak must overcome a presumption that the undertakings of a properly licensed attorney are sound trial strategy.Strickland, 466 U.S. at 689. Moreover, the benefit of hindsight will not be allowed to distort the assessment of what was reasonable given trial counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524-525.
 {¶ 89} A complete review of this record clearly indicates that trial counsel did effectively represent Levonyak. Counsel presented a self-defense defense that if believed would have exonerated Levonyak. And, in fact, it could be concluded that given the verdict, trial counsel was successful, at least in part; the jury found Levonyak not guilty of attempted murder.
 {¶ 90} Next, Levonyak claims that trial counsel was ineffective for failing to gather evidence about Gray's level of intoxication. This argument must fail. The record clearly reveals that testimony established Gray's level of intoxication. Dr. Ranson testified that his level of intoxication was .171 and that this was over the legal limit. (Tr. 205-206). Thus, considering the testimony, Gray's level of intoxication was *Page 19 
before the jury for it to consider. Trial counsel was not ineffective in that regard; this argument lacks merit.
 {¶ 91} The next argument is that trial counsel was ineffective for failing to file a suppression motion. Specifically, Levonyak contends that trial counsel should have moved to suppress the two photographs of Gray's injuries.
 {¶ 92} It is clear from Levonyak's argument that he did not want the photographs of Gray's injuries before the jury. However, as the state points out, the correct form to present that issue to the trial court would be by a motion in limine, not a motion to suppress.
 {¶ 93} A "motion to suppress" is defined as a "[d]evice used to eliminate from the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self incrimination), or the Sixth Amendment (right to assistance of counsel, right of confrontation etc.), of U.S. Constitution." Black's Law Dictionary (6 Ed.1990) 1014. Thus, a motion to suppress is the proper vehicle for raising constitutional challenges based on the exclusionary rule. State v. French (1995), 72 Ohio St.3d 446, 449.
 {¶ 94} A "motion in limine" is defined as "[a] pretrial motion requesting [the] court to prohibit opposing counsel from referring to or offering evidence on matters so highly prejudicial to [the] moving party that curative instructions cannot prevent [a] predispositional effect on [the] jury." Black's Law Dictionary, supra at 1013. The purpose of a motion in limine "is to avoid injection into [the] trial of matters which are irrelevant, inadmissible and prejudicial[,] and granting of [the] motion is not a ruling on evidence and, where properly drawn, granting of [the] motion cannot be error." French,72 Ohio St.3d at 449-450.
 {¶ 95} As is shown by the difference between suppression and limine, a motion to suppress would not have been granted because what was being asked for would not fall under a suppression ruling. Thus, for that reason alone, Levonyak's argument is meritless.
 {¶ 96} However, in the interest of justice, we interpret Levonyak's argument to mean that trial counsel was ineffective for failing to move for a motion in limine. As *Page 20 
this court has previously rationalized, counsel need not file a motion in limine to have photographs excluded and may instead merely lodge an objection at trial when the state seeks to submit and later admit the photographs into evidence. State v. Goodwin, 7th Dist. No. 99CA220, 2001-Ohio-3416. As explained under the second assignment of error, counsel did not object to the admission of the photographs and the failure to object to the admission of the photographs did not constitute plain error, let alone an abuse of discretion. The photographs assisted the trier of fact; thus they were admissible. Neither an objection nor a motion in limine would have been successful in this case. Counsel is not ineffective for failing to raise a claim that is not meritorious.State v. Ratcliff (1994), 95 Ohio App.3d 199, 206. As such, Levonyak's argument fails.
 {¶ 97} The last argument Levonyak makes under this assignment of error is that trial counsel was ineffective for failing to request a self-defense instruction. As was explained previously, a self-defense instruction was given. (Tr. 594-599, 603-604). Furthermore, as aforementioned, that self-defense instruction was a proper instruction. Thus, this argument fails.
 {¶ 98} It is noted that in this argument Levonyak cites a case that according to him stands for the proposition that ineffective assistance of counsel occurs when counsel failed to request an instruction on accident. It is not clear whether Levonyak is contending that trial counsel should also have requested an instruction on accident. Assuming that is also one of his arguments, it still fails.
 {¶ 99} Accident and self-defense are inconsistent theories.
 {¶ 100} "Accident involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act. In contrast, a defendant claiming self-defense concedes he had the purpose to commit the act, but asserts that he was justified in his actions. The Supreme Court of Ohio has considered this paradox and stated: `Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful.'" State v. Barnd (1993),85 Ohio App.3d 254, 260, quoting State v. Champion (1924), 109 Ohio St. 281, 286-287. *Page 21 
 {¶ 101} Levonyak's testimony is that he was afraid for his life, that Gray threatened his family and house. His testimony is not that the gun going off was an accident. Thus, the evidence did not support an accident instruction. Furthermore, a decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client."State v. Murphy, 91 Ohio St.3d 516, 524, 2001-Ohio-0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as `to make ordinary counsel scoff."'State v. Woullard, 158 Ohio App.3d 31, 2004-Ohio-3395, ¶ 39, quotingState v. Yarber (1995), 102 Ohio App.3d 185, 188. Trial counsel's decision to pursue a theory of self-defense in this case does not meet this standard. This argument fails and this assignment of error lacks merit.
 THIRD ASSIGNMENT OF ERROR {¶ 102} "THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT SENTENCED APPELLANT TO MAXIMUM PRISON ON FIREARM SPECIFICATION AND NON-MINIMUM SENTENCE ON FELONIOUS ASSAULT WHEN APPELLANT HAS NOT PREVIOUSLY BEEN IN PRISON IN VIOLATION OF HIS DUE PROCESS CLAUSE OF UNITED STATES CONSTITUTION."
 {¶ 103} Under this assignment of error, Levonyak argues that since this is his first felony conviction, the sentence he received is disproportionate to the crime. He received three years on felonious assault and a mandatory three year sentence on the gun specification. The three years on the felonious assault conviction is neither a maximum nor minimum sentence.
 {¶ 104} Levonyak argues that he should have received a one year sentence on the firearm specification. His argument is incorrect. The firearm specification in the indictment alleges that Levonyak used the firearm to facilitate the offense and thus, was in violation of R.C.2941.145(A). Levonyak was found guilty of R.C. 2941.145(A), the firearm specification. Pursuant to R.C. 2941.145(A) the three year sentence was mandatory. The trial court was required to sentence Levonyak to three years for the firearm specification. *Page 22 
 {¶ 105} Levonyak also argues that the trial court did not comply with R.C. 2929.11 in that it did not articulate how the sentence in this case was consistent with sentences imposed for similar crimes. The sentencing journal clearly references R.C. 2929.11 and it is clear that the trial court considered those factors in sentencing. The trial court was not required to give reasons for the sentence it gave. The language of R.C.2929.11 merely states that the sentencing court "shall be guided by the overriding purposes of felony sentencing." Nothing in the language indicates that it must give those reasons on the record. Thus, there is no error in that regard.
 {¶ 106} Lastly, Levonyak argues that the trial court "must give its reasons including the reasons for a consecutive sentence." His argument is not articulated very well, but this court is under the impression that he is attempting to make a Foster, 109 Ohio St.3d 1, 2006-Ohio-856, argument.
 {¶ 107} The trial court, in sentencing Levonyak, stated the following:
 {¶ 108} "The Court finds pursuant to R.C. 29292.14(B) that the shortest prison term possible will demean the seriousness of the offense AND will not adequately protect the public and therefore imposes a greater term." 11/26/05 J.E.
 {¶ 109} The Ohio Supreme Court in Foster found that this section of R.C. 2929.14(B), in addition to other sections, was unconstitutional because it violated a defendant's right to a jury trial. Id. The Court then held that all cases "pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion." Id. at ¶ 104.
 {¶ 110} Thus, in accordance with Foster the sentence is vacated and the cause remanded for resentencing. This assignment of error has some merit.
 CONCLUSION {¶ 111} For the foregoing reasons, the conviction is hereby affirmed. However, the sentence is vacated pursuant to Foster and the case is remanded to the trial court for resentencing.
Donofrio, J., concurs.
Waite, J., concurs.
[1] Some appellate courts have stated that aggravated assault is a lesser included offense. State v. Harrop, 12th Dist. No. CA 2005-12-036,2006-Ohio-6080; State v. Briggs, 3d Dist. No. 1-06-27, 2006-Ohio-5144. As is shown above, these cases are incorrect. Aggravated assault is an inferior degree not a lesser included offense. *Page 1