[Cite as *State v. Bostick*, 2012-Ohio-5048.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25853 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| ALVIN BOSTICK | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 11 3115 |

DECISION AND JOURNAL ENTRY

Dated: October 31, 2012

BELFANCE, Judge.

{¶1} Defendant-Appellant Alvin Bostick, Sr. appeals from his convictions in the Summit County Court of Common Pleas. For the reasons set forth below, we reverse and remand the matter for a new trial.

I.

{¶2} Mr. Bostick was indicted in November 2010 on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, with an accompanying repeat violent offender specification, one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and one count of domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree. The incident that gave rise to the charges occurred late in the evening on October 31, 2010, and involved Mr. Bostick's then-girlfriend, whom he was living with at the time.

{¶3} The matter proceeded to a jury trial, during which Mr. Bostick's attorney requested a jury instruction on aggravated assault as an inferior degree offense of felonious assault. The request was denied. Mr. Bostick was found guilty of the charges, and the trial court found Mr. Bostick to be a repeat violent offender as alleged in the specification. Mr. Bostick was sentenced to a total of 18 years in prison.

{¶4} Mr. Bostick initially appealed in 2011. However, his appellate counsel failed to file a brief, and his appeal was dismissed. Thereafter, Mr. Bostick's subsequent appellate counsel filed a motion to reopen his appeal, which was granted. Mr. Bostick now raises a single assignment of error for our review.

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON AN OFFENSE OF INFERIOR DEGREE OF THE INDICTED OFFENSE, TO WIT: AGGRAVATED ASSAULT.

{¶5} Mr. Bostick asserts that the trial court erred in failing to instruct the jury on aggravated assault as an inferior degree offense of felonious assault. We agree.

{¶6} "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph two of the syllabus. It is well settled that aggravated assault is an inferior degree offense of felonious assault. *See State v. Mack,* 82 Ohio St.3d 198, 200 (1998), quoting *Deem* at paragraph four of the syllabus. *Compare* R.C. 2903.11(A)(1) *with* R.C. 2903.12(A)(1). Thus, "'in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated

assault must be given to the jury.'" *Mack* at 200, quoting *Deem* at paragraph four of the syllabus. The evidence

> will be sufficient to entitle a defendant to an instruction on [aggravated assault] as an inferior degree of [felonious assault,] if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances.

*State v. Rhodes*, 63 Ohio St.3d 613, 617-618 (1992); *see also State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, ¶ 49-51 (1st Dist.) (applying *Rhodes* to aggravated assault).

{¶7} The Supreme Court in *Deem* stated that "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." (Internal quotations and citation omitted.) *Deem,* 40 Ohio St.3d at 211. "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." (Internal quotations and citation omitted.) *Id.*

{¶8} The Supreme Court later clarified the test to apply to determine if an instruction is appropriate:

> First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage."

*Mack,* 82 Ohio St.3d at 201, quoting *State v. Shane*, 63 Ohio St.3d 630, 634-635 (1992). It is only during the second phase of the test that "the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time must be considered." (Internal

quotations, alterations, and citation omitted.) *Shane* at 634. "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *Mack* at 201. In discussing voluntary manslaughter as an inferior degree offense of murder, the Supreme Court of Ohio has noted that there are certain "classic" situations in which the inferior degree offense instruction is given, such as "assault and battery, mutual combat, illegal arrest and discovering a spouse in the act of adultery." *Shane* at 635. The mitigating circumstances in the voluntary manslaughter statute are identical to those in the aggravated assault statute. *Compare* R.C. 2903.03 *with* R.C. 2903.12; *see also State v. Hancher*, 2d Dist. No. 23515, 2010-Ohio-2507, ¶ 53 (discussing the language from *Shane* in a felonious assault/aggravated assault case).

{¶9} The victim and Mr. Bostick each testified to an entirely different sequence of events. The victim essentially testified that Mr. Bostick, without any provocation on her part, attacked the victim almost immediately after she returned home and continued to do so until she became unconscious. Clearly, such would not warrant an instruction on aggravated assault. However, in examining the law as set forth above, we conclude that there was sufficient evidence to warrant the instruction on aggravated assault. We are particularly mindful that we are required to view the evidence in a light most favorable to Mr. Bostick and consider whether a reasonable jury could conclude that Mr. Bostick established the existence of a mitigating circumstance by a preponderance of the evidence. *See Rhodes*, 63 Ohio St.3d at 617-618.

{¶10} Mr. Bostick testified that he was living in the victim's house and that she was his girlfriend. However, he wanted to end the relationship, and, on the night of the incident, he had packed his suitcases and was planning to have his ex-wife pick him up so he could leave. Before he could do so, the victim arrived home. According to Mr. Bostick, she was drunk. The victim wanted to know what was going on and demanded that they sit down and talk. The victim was

"cussing[]" and "acting really bad[.]" Mr. Bostick was not very interested in talking. At one point, he went into the kitchen, and the victim followed him and then threw a pan of water at Mr. Bostick. Subsequently, she sprayed Mr. Bostick in the eyes with an air freshener. While Mr. Bostick proceeded to use his cell phone, the victim went upstairs and got a .22 rifle. Mr. Bostick stated that, because the victim had pointed the rifle at him before, he had at some point prior removed the bullets. However, he could not be sure the rifle was not loaded as she had gone upstairs to retrieve it and, thus, she could have loaded it. Mr. Bostick testified that the victim sat in a chair near him, told him she was going to shoot him, and pulled the trigger. Mr. Bostick then threw something at the victim. He testified that he "flipped[]" and "saw red." The victim then pulled the trigger again and according to Mr. Bostick, the two started fighting. Mr. Bostick was trying to get the gun from the victim, and they were both hitting each other and rolling around on the ground. Mr. Bostick ultimately got the gun and proceeded to wipe it off and stuck it in a nearby closet. The victim threw something else at Mr. Bostick and Mr. Bostick "jumped on her[.]" While they were fighting, the victim kicked Mr. Bostick in the groin, which incapacitated him for a short period of time. They continued throwing things at each other, and, ultimately, Mr. Bostick threw a vodka bottle at the victim and hit her in her face. According to Mr. Bostick, "[s]he started bleeding, and then [he] sat down and she came at [him] again[.]" Mr. Bostick testified that "[s]he just wanted to fight." Mr. Bostick went into the kitchen and then called 911. The victim was taken to the hospital and remained in intensive care for several days. There is no dispute the victim suffered severe injuries during the altercation.

{¶11} Notably, Mr. Bostick's version of events does not explain how all of the items discovered damaged and/or bloodied became damaged and/or bloodied. Mr. Bostick could either not remember how certain items became damaged, or insisted that he never hit the victim with an

item, such as the vacuum cleaner, despite the fact that there appeared to be blood on it. However, we are required to look at the evidence in a light most favorable to Mr. Bostick and determine if a jury could reasonably believe that he was acting in a state of sudden passion or rage. *Rhodes*, 63 Ohio St.3d at 617-618; *Mack,* 82 Ohio St.3d at 201, quoting *Shane*, 63 Ohio St.3d at 634-635; *see also State v. Ledbetter*, 2d Dist. No. 93-CA-54, 1994 WL 558996, *8 (noting that "[a]lthough Ledbetter's testimony was in substantial conflict with the testimony of all of the other eyewitnesses, it was for the jury to decide whom to believe[]"); *State v. Warner*, 11th Dist. No. 2006-P-0048, 2007-Ohio-3016, ¶ 65 (noting that the court is not to weigh the evidence, but determine whether it is sufficient in deciding whether an instruction is warranted).

{¶12} If the jury believed Mr. Bostick's version of events, we conclude it is possible that they could have found the existence of a mitigating circumstance. The overall altercation, as described by Mr. Bostick, was a generally continuous series of events, which involved a great deal of mutual combat. *See Shane* at 635; *Hancher*, 2010-Ohio-2507, at ¶ 53. The sequence of having a pan of warm water and an ashtray thrown at you, being sprayed in the eyes with air freshener, having a rifle pointed at you and the trigger pulled twice, and being kicked in the groin, all within the course of the same altercation could objectively amount to sufficient provocation by the victim to "arouse the passions of an ordinary person beyond the power of his or her control." *Mack* at 201, quoting *Shane* at 634-635; *see also Warner* at ¶ 64 (concluding that "[a]n ordinary person may be incited into a sudden passion or fit of rage, when his wife informs him of her infidelity, calls him names, questions him about his whereabouts, hits him in the head with a cast-iron skillet, and, then, tries to retrieve a knife in an apparent attempt to do more harm to the person[]"). We note that the precise timing and length of the altercation is unclear from the testimony; however, Mr. Bostick's testimony suggests that there was no long

break in the action which would allow for him to calm down. Even Mr. Bostick's testimony concerning cleaning the rifle does not make it appear that that event was anything other than a brief incident. Mr. Bostick did not put the gun away upstairs where it came from; instead, he put it in a nearby closet on the same floor.

{¶13} Further, there was evidence that Mr. Bostick actually "was under the influence of sudden passion or in a sudden fit of rage." (Internal quotations and citation omitted.) *Mack* at 201. Mr. Bostick testified that, when the victim got the gun he "flipped[]" and "saw red." Mr. Bostick stated he was scared and worried, but additionally acknowledged that he was angry. *See id.* ("Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."); *State v. Harding*, 2d Dist. No. 24062, 2011-Ohio-2823, ¶ 44 (concluding that the defendant failed to meet the subjective prong when there was only evidence that defendant acted out of fear). Further, Mr. Bostick's lack of memory of the precise sequence of events and the items that were thrown could be viewed as supporting the idea that Mr. Bostick was under a sudden fit of passion or rage. Thus, we conclude that there was sufficient evidence presented whereby a reasonable jury could find that the circumstances as testified to by Mr. Bostick amounted to serious provocation. *See State v. Torres,* 3rd Dist. No. 4-01-06, 2002 WL 418392, *8 (Mar. 18, 2002)(noting that "the conflict was in continual motion from the start of the fight * * * to the ultimate assault * * *, occasioned by the fact that Marroquin followed Torres each time the latter left the scene of the current confrontation[]"); *State v. McGranahan*, 1st Dist. No. C-940374, 1995 WL 334624, *2 (June 7, 1995)(concluding that the act of victim grabbing the defendant by the testicles and inflicting excruciating pain could amount to serious provocation). Accordingly, Mr. Bostick was entitled to a jury instruction on the inferior degree

offense of aggravated assault. *Mack,* 82 Ohio St.3d at 200, quoting *Deem,* 40 Ohio St.3d at paragraph four of the syllabus. Thus, we sustain Mr. Bostick's sole assignment of error.

III.

**{¶14}** In light of the foregoing, we sustain Mr. Bostick's sole assignment of error and remand the matter to the Summit County Court of Common Pleas for proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

DICKINSON, J.
CONCURS.

WHITMORE, P. J.
DISSENTING.

{¶15} Because I do not believe that the trial court abused its discretion by refusing to instruct the jury on aggravated assault under the specific facts of this case, I respectfully dissent.

{¶16} This Court's standard of review on the question presented in this appeal is an exceedingly deferential one. We have held that we review "a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. No. 26027, 2012-Ohio-4797, ¶ 68. To warrant a reversal of the court's decision, therefore, this Court would have to conclude that the trial court was "unreasonable, arbitrary, or unconscionable in its ruling." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The record in this matter does not support the conclusion that the trial court abused its discretion.

{¶17} To warrant an aggravated assault instruction, Bostick had to set forth sufficient evidence of serious provocation. *See State v. Mack*, 82 Ohio St.3d 198, 200 (1998).

> Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

*State v. Deem*, 40 Ohio St.3d 205, 211 (1988), quoting *State v. Mabry*, 5 Ohio App.3d 13 (1982), paragraph five of the syllabus. When considering provocation, one must take into account any time that the defendant had to reflect, deliberate, or cool down. *See Deem* at 211. *Accord State v. Robinson*, 161 Ohio St. 213, 219-220 (1954). Even if adequate provocation may have existed

at one point in time as between the defendant and the victim, "past incidents * * * do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." *State v. McClelland*, 9th Dist. No. 18894, 1999 WL 247755, *4 (Apr. 21, 1999), quoting *Mack* at 201. Further, a defendant's response to alleged provocation must bear correlation to the action(s) alleged to constitute the provocation. *See, e.g., State v. Levonyak*, 7th Dist. No. 05MA227, 2007-Ohio-5044, ¶ 20-21 (fistfight, even if it did occur, was not sufficient provocation to warrant the defendant shooting the victim); *State v. Watson*, 8th Dist. No. 87281, 2006-Ohio-5738, ¶ 22 ("Given the physical difference in size between Miller and Watson, it's doubtful Miller could have struck Watson in a manner that would incite the use of lethal force."); *Akron v. Dokes*, 31 Ohio App.3d 24, 25 (9th Dist.1986) ("[O]ne may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend."). Even viewing the evidence in a light favorable to Bostick, the evidence here does not support the conclusion that Bostick set forth sufficient evidence of serious provocation.

{¶18} Bostick's testimony about the sequence of events that led to him throwing a Vodka bottle at the victim was, at best, confused. He testified that, at some point after he arrived home, the victim took all of the following actions against him: she yelled at him, she threw a pan of lukewarm water at him, she sprayed him with air freshener, she pointed a .22 caliber rifle at him and twice pulled the trigger, she tussled with him on the floor, she threw some unidentified object at him, and she kicked him in the groin. Bostick was not clear as to the exact timing of the events. He testified that he "flipped" and "saw red" when the victim pointed the rifle at him and pulled the trigger. He then testified, however, that he was able to wrestle the rifle from the victim after she threatened him with it, wipe it off, and place it in the closet. When the prosecutor attempted to have Bostick recall the exact order of events that had occurred on

recross-examination, Bostick could not do so. The last exchange on recross-examination, which was also the end of the testimony at trial, was as follows:

> [PROSECUTOR:] * * * Don't you agree with me the way you described the throwing of the bottle, it was toward the end of the scenario. It was after the gun and after all of those things, correct?

> [BOSTICK:] I'm not sure.

Thus, by his own testimony, Bostick could not even recall at what point he threw the bottle at the victim. Bostick also acknowledged during his testimony that he and the victim were standing several feet apart when he threw the Vodka bottle at her hard enough for it to shatter when it hit her face.

{¶19} Even assuming that the victim seriously provoked Bostick at some point by threatening him with a rifle, Bostick testified that he took the rifle from the victim, cleaned it, and put it away. Bostick explained that he wiped the gun off to remove his fingerprints because he knew he was a convicted felon and he did not want to be held responsible for the gun if the police later found it. Bostick's actions belie his testimony that he "felt like [he] was fighting for [his] life." Bostick's presence of mind to clean the rifle in order to protect himself from police involvement hardly supports the conclusion that he acted absent any time to reflect, deliberate, or cool down. *See Deem*, 40 Ohio St.3d at 211; *Mack*, 82 Ohio St.3d at 201; *McClelland*, 1999 WL 247755, at *4. Further, none of the additional actions that the victim might have allegedly taken after the rifle was no longer a threat were sufficient to warrant Bostick's response; to wit: hurling a large glass bottle at the victim's face when she was standing several feet away. *See, e.g., Levonyak*, 2007-Ohio-5044, at ¶ 20-21; *Watson*, 2006-Ohio-5738, at ¶ 22; *Dokes*, 31 Ohio App.3d at 25. Upon review of the record, I would not conclude that the trial court abused its

discretion by refusing to instruct the jury on aggravated assault. Consequently, I respectfully dissent.

APPEARANCES:

DAVID M. WATSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.