[Cite as *In re J.C.*, 2012-Ohio-3144.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.C.
      J.C.

C.A. Nos.    26229
                  26233

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 11-05-360
                  DN 11-05-361

DECISION AND JOURNAL ENTRY

Dated: July 11, 2012

WHITMORE, Presiding Judge.

{¶1} Appellant, Juanana C. ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, adjudicating her children dependent and granting temporary custody to Summit County Children Services ("SCCS"). Additionally, Dakota P. ("Father") appeals from the same judgment. This Court affirms.

I

{¶2} On May 17, 2011, Mother brought Jo.C. and Ju.C. into the emergency room at Barberton Hospital. Mother told the physician's assistant that she had received a phone call in the middle of the night telling her that the children had been sexually abused by a former boyfriend and that she should have the children examined. The examination did not reveal any

evidence of abuse, which did not surprise the physician's assistant because it had been approximately two months since Mother had last seen this former boyfriend.

{¶3} Because there was an allegation of sexual abuse the police were called and an officer arrived at the hospital and prepared a report. The next day, the case was assigned to Detective Shannon Davis. Detective Davis spoke with Mother on May 18th to explain the investigation process, which first required Detective Davis to schedule an appointment for the children to have a risk evaluation at Children's Hospital. Detective Davis told Mother that she would be in touch as soon as the appointment was scheduled.

{¶4} At approximately 7:00 a.m. the following morning, Mother arrived with the children at the police station to inquire about the investigation of her case. Mother appeared to be disheveled, her hair was in disarray, she was wearing a tank top without any undergarments, and she had a very strong body odor. Mother was also exhibiting erratic behavior with extreme emotional mood swings. The children had runny noses and appeared to be sick or very sleepy. The youngest child was without a diaper. After approximately 45 minutes, Detective Davis decided to remove the children from Mother's care pursuant to Juv.R. 6 and a call was placed to SCCS. Sarah-Maria Riffle, a SCCS intake caseworker, went to the police station and took custody of the children.

{¶5} Later that morning, Louanne Jenkins, a service coordinator with Help Me Grow, arrived at Mother's apartment for a scheduled visit. Mother had emptied all of the furniture out of her apartment and had placed all of her belongings on the lawn. There was an intense odor of bleach and puddles of bleach on the floor of the apartment. Mother informed Jenkins that she had cleaned everything with bleach in an attempt to rid the apartment of evil. Mother appeared distraught, confused, and could not focus. Jenkins, having never seen Mother this way before,

placed a call to 911. The police responded to the call, but informed Jenkins that there was nothing they could do. Jenkins took Mother to the hospital, but Mother left before being evaluated by a doctor.

{¶6} After an adjudicatory hearing, the magistrate issued a decision finding Jo.C. and Ju.C. dependent children. After a subsequent dispositional hearing, the magistrate granted temporary custody of the children to SCCS. Mother and Father filed objections to both of the magistrate's decisions. The trial court overruled the objections and adopted the magistrate's decisions. Both parties appealed from that judgment, and this Court consolidated the matters on appeal. Father raises one assignment of error, and Mother raises three assignments of error for our review. For ease of analysis, we address some assignments of error out of order.

II

Father's Assignment of Error

THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS THE COMPLAINT OF THE APPELLANT FOR LACK OF JURISDICTION[.]

{¶7} In his sole assignment of error, Father argues that the juvenile court lacked jurisdiction to hear the case because the complaint was deficient. Specifically, Father argues that the complaint was deficient because its accompanying affidavit was not based on the personal knowledge of the affiant and the affidavit was not incorporated into the complaint, which left it devoid of required facts.

{¶8} "A complaint under Juv.R. 10 and R.C. 2151.27 alleging that a child is dependent must state the essential facts which bring the proceedings within the jurisdiction of the court." *In re Hunt*, 46 Ohio St.2d 378 (1976), paragraph one of the syllabus. However, "[t]he *Hunt* case does not stand for the proposition that the juvenile court is without jurisdiction to act upon a

defective complaint." *In the Matter of Daniels*, 9th Dist. Nos. 9794, 9795, 9796, & 9802, 1981 WL 3907, *2 (1981).

**{¶9}** Any alleged defect in a complaint may be raised by motion and must be heard before the adjudicatory hearing. Juv.R. 22(D)(2). If such a prehearing motion is filed, it must "be filed by the earlier of: (1) seven days prior to the hearing, or (2) ten days after the appearance of counsel." Former Juv.R. 22(E)[1]. A "defect [in a complaint] must be raised by motion or it is [forfeited]." *In the Matter of Daniels* at *2. While this might appear to be a harsh result, it should be remembered that even if a complaint is defective, the State must nevertheless prove sufficient facts at the adjudicatory hearing for the court to find dependency or neglect. The rights of the parties, therefore, are "amply protected." *Id.*

**{¶10}** Here, Father made an oral motion to dismiss at the start of the adjudicatory hearing on July 14, 2011. However, Father was required to raise any defects in the complaint at least seven days prior to the hearing, which was earlier than ten days after the appearance of his counsel. *See* Former Juv.R. 22(E). Because Father failed to do so, the motion was untimely and any challenge to a defect in the complaint has been forfeited. *See In the Matter of Daniels* at *2. While forfeiture leaves open a claim of plain error, Father has not made such an argument. Because Father has not presented an argument of plain error, we decline to address it. *See State v. Hairston*, 9th Dist. No. 05CA008768, 2006-Ohio-4925, ¶10-11; App.R. 16(A)(7). Father's sole assignment of error is overruled.

**{¶11}** We pause here to draw attention to matters of concern with the complaint in this case. The complaint consists of three separate pages. The first page is a form affidavit which provides boxes to be checked in order to specify whether the child is alleged to be abused,

---

[1] We note that Juv.R. 22(E) was amended on July 1, 2012, and that the current version of the rule is not applicable here.

neglected, dependent or deserted, and other boxes are to be checked to indicate which orders are being sought from the court. The second page consists of another form with boxes to be checked which specify which part of the statute is alleged to have been violated. The third page is a narrative which purports to contain the factual basis for the complaint. The second and third pages are not signed, initialed, or incorporated by reference into the complaint page in any way. While not dispositive here, we note that it does not represent best practice and it could be dispositive in a future case.

### Mother's Assignment of Error Number Two

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE STATE TO PRESENT EVIDENCE OF PREVIOUS INVOLVEMENT WITH CSB, IN VIOLATION OF THE OHIO RULES OF EVIDENCE RULE 404(B).

{¶12} In her second assignment of error, Mother argues that the court erred when it allowed the admission of other acts evidence during the adjudication hearing. Specifically, Mother argues that it was improper for the court to allow testimony regarding Mother's prior involvement with SCCS.

{¶13} Evid.R. 404(B) prohibits evidence of other acts "to prove the character of a person in order to show action in conformity therewith." Evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *see also* R.C. 2945.59. "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, Slip Opinion No. 2012-Ohio-2407, syllabus.

{¶14}  At the adjudicatory hearing, testimony was heard from Sarah-Maria Riffle, an intake caseworker with SCCS.  Mother points to two instances during direct examination in which Riffle referred to a previous SCCS case.  First, Riffle said that she had worked with Mother on a previous referral.  Second, Riffle said that she was aware that Father "had only been allowed to have supervised visitation with" Jo.C., and that he had failed to complete his case plan objectives.

{¶15}  The basis of the prior SCCS case was not discussed.  The testimony that Riffle had previously met Mother was merely a foundational question to establish that Mother's appearance and demeanor on May 19, 2011, was not the same as it had been in the past.  Riffle testified that Mother "previously had always been very well put together physically.  She had always had clean clothes on, she had always had appropriate undergarments on, her hair was always done very well, [and] I never smelled any body odor."  This is not inadmissible character evidence.  Further, Riffle's testimony regarding Father's failure to complete his previous case plan objectives and his restriction to supervised visits with Jo.C. did not implicate any prior act by Mother.

{¶16}  Riffle's testimony was not inadmissible character evidence offered to show that Mother acted in conformity therewith.  Accordingly, Mother's second assignment of error is overruled.

<u>Mother's Assignment of Error Number One</u>

> THE TRIAL COURT'S DECISION TO FIND THESE CHILDREN DEPENDENT IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17}  In her first assignment of error, Mother argues that the court's finding of dependency is against the manifest weight of the evidence.  We disagree.

**{¶18}** "When reviewing an appeal from the trial court's ruling on objections to a magistrate's decision, this Court must determine whether the trial court abused its discretion in reaching its decision." *Fields v. Cloyd*, 9th Dist. No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶18.

**{¶19}** In evaluating whether a civil judgment is against the manifest weight of the evidence, the standard of review is the same as that in a criminal case. *See Eastley v. Volkman*, Slip Opinion No. 2012-Ohio-2179, ¶7-10.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.* The court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Otten* at 340. *See also State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

> A dependent child is any child "[w]ho lacks proper care or support by reason of the mental or physical condition of his [or her] parents, guardian, or custodian," or "[w]hose condition or environment is such as to warrant the state, in the interest of the child, in assuming the guardianship." R.C. 2151.04(B) and (C). The burden of proof to demonstrate that a child is dependent is reposed with the state

by clear and convincing evidence. *In re Bishop*, 36 Ohio App.3d 123, 124 (5th Dist.1987).

*In re Bassette*, 9th Dist. No. 20751, 2002 WL 465435, *1 (Mar. 27, 2002).

{¶20} "[A] child may be declared dependent if [his or] her prospective condition *or environment would be* threatening to the health or well-being of the infant. The state is not required to take the 'long odds gamble' on the life of a child before intervening." (Emphasis added and internal citations omitted.) *In re Massengill*, 76 Ohio App.3d 220, 226 (6th Dist.1991).

> The conduct of a parent is relevant [in adjudicating a child dependent] solely insofar as that parent's conduct forms a part of the environment of [the] child. As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention.

*In re Burrell*, 58 Ohio St.2d 37, 39 (1979).

{¶21} Mother argues that the evidence presented focused on the concerns of her mental health and did not demonstrate that the children's environment warranted state intervention. However, Mother's mental health is directly related to the children's environment and was properly considered by the court.

{¶22} Mother cites *In re V.R.*, 9th Dist. No. 23527, 2008-Ohio-1457, for the proposition that her behavior alone cannot warrant state intervention. We disagree. First, *In re V.R.* is distinguishable in its facts. When V.R. was born, her mother tested positive for marijuana, alcohol, and opiates. *Id.* at ¶ 2. V.R. was placed with the maternal grandmother, and her mother immediately began working on her case plan objectives, which included weekly drug screening. *Id.* at ¶ 25. Mother was consistently and frequently involved with V.R.'s care, which was observed as being appropriate. *Id.* at ¶ 4, 10, 11-12, 19.

{¶23} Here, Mother has not been compliant with her case plan objectives (i.e., following through with mental health evaluation and recommendations). Joselyn Vasquez-Molina, the assigned SCCS protective caseworker, testified that "Mother does not really communicate with me at all * * *." While Mother's visits with the children have been going well overall, she had missed visitation appointments without informing SCCS or her caseworker. Additionally, Vasquez-Molina testified that Mother had informed her that she no longer had housing. Vasquez-Molina said that she had been unable to verify this because Mother was not communicating with her.

{¶24} Mother's erratic behavior goes directly to the children's environment and their safety. Mother placed all of the contents of her apartment on the front lawn of her apartment and doused everything in bleach. She then threw her keys to the apartment away because there was "evil" in the apartment. In the early morning hours of May 19th, Mother drew three symbols on the sidewalk where she sat with the children until she felt safe from the evil, at which point she took the children and ran to the police station.

{¶25} Louanne Jenkins, a service coordinator with Help Me Grow, testified that she had met with Mother every two weeks for the past two years. Jenkins testified that when she saw Mother outside of her apartment in the late morning on May 19th, she was not herself. Jenkins testified that the children were not with Mother and that she was scared that something had happened to the children. Jenkins said she was so scared that she "didn't want to go into the apartment alone" so she called 911. The police responded, but informed Jenkins that there was nothing they could do for Mother. Jenkins, concerned for Mother's mental health, drove her to St. Thomas hospital, but Mother left before seeing a doctor.

{¶26} The testimony of Detective Shannon Davis and Sarah-Maria Riffle was also consistent with Jenkins'. Mother's conversations were hard to follow, as she would jump from subject to subject. Mother had drastic and quick mood swings. "She would get very angry and very agitated and talk very quickly, and then she would be almost eerily calm and silent for a few moments, and then – a few seconds and then she would start again."

{¶27} After reviewing the record, we cannot conclude that the court abused its discretion in finding Mother's conduct created an environment for the children that warranted state intervention. Mother's first assignment of error is overruled.

<u>Mother's Assignment of Error Number Three</u>

THE TRIAL COURT'S DECISION TO PLACE THESE CHILDREN IN THE TEMPORARY CUSTODY OF SUMMIT COUNTY CHILDREN'S SERVICES BOARD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶28} In her third assignment of error, Mother argues that the court's decision to grant SCCS temporary custody is against the manifest weight of the evidence. We disagree.

{¶29} Because Mother's third assignment of error also challenges the weight of the evidence, we incorporate the manifest weight standard of review laid out in the previous assignment of error.

> Although the statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, this Court has previously held that the trial court must base such a decision on the best interest of the child. *In re S.J.*, 9th Dist. No. 23199, 2006-Ohio-6381, ¶ 32, citing *In re N.P.*, 9th Dist. No. 21707, 2004-Ohio-110, ¶ 23. Consequently, "[i]n legal custody cases, trial courts should consider all factors relevant to the best interest of the child." *In re S.J.* at ¶ 34.

*In re R.R.*, 9th Dist. No. 23641, 2007-Ohio-4808, ¶ 12.

{¶30} Mother has not complied with her case plan, which was to undergo a psychological evaluation and follow the recommendations, if any, of that evaluation. Consequently, there are continued concerns about Mother's mental health and the effect that it

could have on the children. One of the factors the court should consider when determining the best interest of the child is "whether the parent has substantially remedied the conditions that caused the child's removal." *In re Pittman*, 9th Dist. No. 20894, 2002-Ohio-2208, ¶ 60. *See also In re S.J.* at ¶ 32 (statutory factors for permanent custody may provide trial courts guidance in making an award of legal custody). Here, the court found that "[t]he initial concerns regarding Mother's mental health remain" and that it was in the best interest of the children to remain in the temporary custody of SCCS. After reviewing the record, we cannot conclude that the trial court abused its discretion in reaching that conclusion. Accordingly, Mother's third assignment of error is overruled.

## III

**{¶31}** Father's sole assignment of error and Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
BETH WHITMORE
FOR THE COURT

MOORE, J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶32} I concur in the judgment. Father has not challenged the juvenile court's determination that he had failed to timely object to the deficiency in the complaint. Therefore, based on the limited arguments Father makes on appeal, I would affirm. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). In addition, I do not concur in the application of *In the Matter of Daniels,* 9th Dist. Nos. 9794, 9795, 9796, & 9802, 1981 WL 3907 (Mar. 18, 1981), to this matter, and I believe the holding in *In the Matter of Daniels* is overly broad and misconstrues the actual holding of *In re Hunt*, 46 Ohio St.2d 378 (1976).

APPEARANCES:

DAVID M. WATSON, Attorney at Law, for Appellant.

GREGORY A. PRICE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.