[Cite as *State v. Howard*, 2014-Ohio-1334.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | C.A. No. 26897 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CURTIS T. HOWARD | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 12 09 2796 |

DECISION AND JOURNAL ENTRY

Dated: March 31, 2014

HENSAL, Judge.

{¶1} Curtis Howard appeals his conviction for felonious assault from the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

{¶2} On the evening of July 22, 2012, Mr. Howard cut Otto Christian on the chin with a pocket knife in the common room of the rooming house where they lived. The men had very different accounts of how it happened. According to Mr. Christian, he came home from work that day, got his dinner ready, and sat down to eat in a recliner in the common room. As he ate and watched television, he could hear Mr. Howard and another resident arguing outside. The other resident entered the house and went upstairs to his room. Mr. Howard came in the house afterwards, and told Mr. Christian to turn off the television. Mr. Christian refused because, under the house rules, he was allowed to watch it until 11:30 p.m. According to Mr. Christian,

although he had a television in his own room, he did not want to watch it there because his room was in the basement and it felt like a dungeon.

{¶3}   Mr. Christian testified that, after he refused to turn off the television, Mr. Howard went into the kitchen. When he came back out, he went into his own room, which was off the common room. Mr. Howard returned to the common room soon thereafter and walked toward Mr. Christian. Mr. Christian thought that Mr. Howard was going to walk past him, but as he got near, he "reached over and caught [Mr. Christian] with his hand." Mr. Christian testified that, although Mr. Howard caught him off guard, he trapped Mr. Howard's hand with his neck. Mr. Howard pulled his hand back and struck Mr. Christian again, cutting Mr. Christian's chin with a pocket knife that he had concealed in his hand. When Mr. Howard attempted to strike him a third time, Mr. Christian pushed him away with his legs, shoving him across the room onto a couch. As Mr. Howard recovered, Mr. Christian got up from the recliner and ran out the back door of the house because he knew other people were outside.

{¶4}   Mr. Christian testified that, while he was asking the people outside to call for help, Mr. Howard exited the house by the front door and came down the driveway in pursuit of him. Mr. Christian circled around the backyard, attempting to avoid Mr. Howard. The owner of the house arrived in a pickup truck shortly thereafter and told Mr. Christian to get in the back of it so he could take him to the hospital. Mr. Christian testified that it took 19 stitches to close the cut on his chin. He said that he did not know how Mr. Howard got a cut on his arm during the altercation, but suspected that he cut himself after delivering one of his blows.

{¶5}   Mr. Howard's recollection of the incident was quite different. According to him, he was alone in his room when someone came into the common room and started blasting the television. He exited his room, saw that it was Mr. Christian, and asked him to turn the volume

down. When Mr. Christian refused, Mr. Howard turned the television set off. Mr. Christian yelled at him to turn it back on, but Mr. Howard refused, so Mr. Christian got up, walked over to the television, and turned it back on. When Mr. Howard attempted to turn it off again, Mr. Christian grabbed his arm. According to Mr. Howard, because the door to his room is next to the television set, he had started reaching into his room to get his cellphone, which was lying on a dresser just inside the door. He intended to call the owner of the house about the loud television. When Mr. Christian grabbed his arm, however, he decided to take his pocket knife from the dresser instead. Mr. Howard testified that, as he brought his arm back into the room, he dropped the knife. It was at that time that he also noticed that his arm was bleeding. Mr. Howard said that he reached down, grabbed the knife, and came up swiping at Mr. Christian to get him off of him. After Mr. Howard connected, Mr. Christian stumbled backwards into the recliner and the two men looked at each other briefly assessing their situation.

{¶6} Mr. Howard testified that, following a brief pause, Mr. Christian got up from the recliner and ran out of the room. Mr. Howard followed him because he thought Mr. Christian was responsible for the cut on his arm and he had not had the chance for sufficient retribution. According to Mr. Howard, at the time, he did not realize that his swipe with the pocket knife had cut Mr. Christian's chin. Once Mr. Howard got outside, however, and saw that Mr. Christian was bleeding, he stopped pursuing him and tended to his arm.

{¶7} The Grand Jury indicted Mr. Howard for felonious assault. Before trial, the State informed him that it intended to use other acts evidence under Evidence Rule 404(B). The first incident had occurred in 1994. In that incident, a man accused Mr. Howard of cutting him across the chin with a box cutter. Mr. Howard alleged that he had been acting in self-defense. The second incident had occurred in 2006. In that incident, Mr. Howard was arrested for cutting

another man on the neck with a box cutter. Mr. Howard again claimed that he had been acting in self-defense. At the start of trial, the court ruled that the facts of the 2006 incident were admissible, but the details of the 1994 incident could be introduced only if Mr. Howard testified. Because Mr. Howard testified, the jury learned about both incidents. It found Mr. Howard guilty of the offense, and the trial court sentenced him to eight years of imprisonment. Mr. Howard has appealed, assigning three errors.

## II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ALLOWING TESTIMONY AS TO OTHER ACTS AND EVIDENCE PERTAINING TO OTHER ACTS THEREFORE DENYING APPELLANT DUE PROCESS AND EQUAL PROTECTION UNDER THE CONSTITUTION OF THE UNITED STATES AND OHIO.

{¶8} Mr. Howard argues that the trial court incorrectly allowed the State to introduce evidence about his prior crimes. The court found that the details of the 2006 incident were admissible because they "may go towards the issue of intent and knowledge." After Mr. Howard chose to testify, it allowed the State to cross-examine him about the 1994 incident as well. Mr. Howard argues that the fact that he cut two other men in the past was not particularly probative in this case. He also contends that the evidence about the prior crimes did not assist in proving his intent or knowledge.

{¶9} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 15. Yet, "Evid.R. 404(B) contains a non-exhaustive list of exceptions under which other acts evidence may be admitted for a purpose other than to show propensity." *State v. Calise*, 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶ 41. The rule

provides that "[e]vidence may be admissible to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *In re J.C.*, 9th Dist. Summit Nos. 26229 & 26233, 2012-Ohio-3144, ¶ 13, quoting Evid.R. 404(B); *see also* R.C. 2945.59.

{¶10} The Ohio Supreme Court has held that, when "considering other acts evidence, trial courts should conduct a three-step analysis." *Williams* at ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.

(Internal citations omitted.) *Id.* at ¶ 20. "[D]ecisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, syllabus. "Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *Id.*

{¶11} To prove Mr. Howard committed felonious assault, the State had to establish that he knowingly caused serious physical harm to Mr. Christian. R.C. 2903.11(A)(1). Although the parties stipulated that Mr. Christian suffered serious physical harm, the State still had to show that Mr. Howard acted knowingly. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). We agree with the trial court that Mr. Howard's previous

acts, in which he used a sharp blade to cut other men, tended to prove that he knew he would probably cause serious physical harm to Mr. Christian if he swiped at his head and neck with a pocket knife. Accordingly, the evidence was probative of one of the elements of the offense and was presented for a legitimate purpose under Evidence Rule 404(B). *See Williams* at ¶ 20.

{¶12} Regarding whether the danger of unfair prejudice substantially outweighed the evidence's probative value, Mr. Howard argues that the facts of the case were simple and that it essentially came down to whether the jury believed him or Mr. Christian. He argues that, under the circumstances, the evidence about his prior acts unfairly influenced the jury to believe Mr. Christian's testimony. He particularly contends that any details about the 1994 incident, which was 18 years earlier, had only a trivial amount of probative value that was significantly outweighed by its prejudicial effect.

{¶13} In weighing evidence's probative value against its prejudicial effect, we must consider all the reasons that the evidence was probative. Specifically, we must consider the fact that, because Mr. Howard testified, the court found that the evidence of Mr. Howard's crimes was also admissible as impeachment evidence under Rule 609. We also note that the trial court lessened the prejudicial effect of the evidence by instructing the jury about its limited use. The court told the jury that the other acts evidence:

> [M]ay not be considered by you as evidence of the Defendant's character in order to show that he acted in conformity with that character. That evidence was presented and may only be considered by you to impeach the credibility of the Defendant or to prove motive, intent, opportunity, preparation, plan, absence of mistake or accident.

"We presume the jury followed those instructions." *Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, at ¶ 23. In light of the dual purpose of the evidence and the court's limiting instruction, we conclude that the danger of unfair prejudice did not so outweigh the probative value of the

other acts evidence that the trial court abused its discretion when it allowed the jury to hear about Mr. Howard's prior criminal acts.

{¶14} Mr. Howard also argues that Evidence Rule 609 does not apply to the 1994 incident, so the trial court incorrectly concluded that the State could cross-examine him about it. Rule 609(A) provides that, subject to Evidence Rule 403, "[f]or the purpose of attacking the credibility of a witness: * * * evidence that a witness other than the accused has been convicted of a crime is admissible if the crime was punishable by * * * imprisonment in excess of one year * * *." The conviction also must have occurred within the last ten years "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Evid.R. 609(B); *see State v. Sommerville*, 9th Dist. Summit No. 25094, 2010-Ohio-3576, ¶ 5.

{¶15} Mr. Howard acknowledges that, following the 1994 incident, he pleaded guilty to aggravated assault, a felony of the fourth degree. The trial court reasoned that, even though the 1994 conviction had not occurred in the last ten years, in light of the fact that Mr. Howard had also had a similar incident in 2006, it would allow the State to cross-examine him about it. Regarding the 1994 incident, Mr. Howard testified that he was attending a soup kitchen when one of the other men hit him. He said that, in response, he hit the man in the head with a napkin holder and cut him on the face with a box cutter.

{¶16} A trial court has broad discretion under Evidence Rule 609 to determine the extent to which evidence of prior acts will be allowed. *State v. Wright*, 48 Ohio St.3d 5, 7 (1990). Upon review of the record, we conclude that the court did not abuse its discretion when it determined that the probative value of Mr. Howard's prior conviction substantially outweighed its prejudicial effect. The evidence of his prior crimes went to whether he was mistaken or

surprised by the harm that he did to Mr. Christian or whether he intended to injure Mr. Christian. It, therefore, was probative as to his claim of self-defense.

{¶17} We conclude that the trial court did not abuse its discretion when it allowed the State to present evidence about Mr. Howard's prior criminal acts. Mr. Howard's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ITS INSTRUCTION AS PERTAINS TO OTHER ACTS OR PRIOR CONVICTIONS IN THAT IT FAILED TO CLEARLY INSTRUCT THAT THE EVIDENCE WAS RECEIVED ONLY OF A LIMITED PURPOSE AND AS SUCH, SAID INSTRUCTION [WAS] PLAIN ERROR.

{¶18} Mr. Howard next argues that the trial court gave the jury an incorrect instruction regarding other acts evidence. The court told the jury:

Now, evidence has been presented that the [d]efendant was previously convicted of certain offenses. This evidence may not be considered by you as evidence of the [d]efendant's character in order to show that he acted in conformity with that character. That evidence was presented and may only be considered by you to impeach the credibility of the [d]efendant or to prove motive, intent, opportunity, preparation, plan, absence of mistake or accident.

Mr. Howard argues that the instruction was invalid because it did not conform with the recommended Ohio jury instruction. In particular, he argues that it did not clarify that the evidence had been received for only a limited purpose or inform the jury that it was allowed to determine whether the evidence of his prior offenses "is true and that the defendant committed them." He further argues that, even though he did not object to the instruction at trial, it was plain error.

{¶19} "This Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *State v. Sanders*, 9th Dist. Summit No. 24654, 2009–Ohio–5537, ¶ 45. In this case, however, because

Mr. Howard did not object to the instruction, he has forfeited all but plain error. *State v. Horton*, 9th Dist. Summit No. 26407, 2013-Ohio-3902, ¶ 50. Under Criminal Rule 52(B), a plain error or defect that affects a substantial right may be noticed although it was not brought to the attention of the trial court. *Id*. "A plain error must be obvious on the record, such that it should have been apparent to the trial court without objection." *Id*., quoting *State v. Kobelka*, 9th Dist. Lorain No. 01CA007808, 2001 WL 1379440, *2 (Nov. 7, 2001). "As notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice, the decision of a trial court will not be reversed due to plain error unless the defendant has established that the outcome of the trial clearly would have been different but for the alleged error." *Id*.

{¶20} "[T]he instructions found in the Ohio Jury Instructions are not mandatory, [but] 'are recommended instructions based primarily upon case law and statutes[.]'" *State v. Armstrong*, 9th Dist. Summit No. 24479, 2009-Ohio-5941, ¶ 13, quoting *Buehler v. Falor*, 9th Dist. Summit No. 20673, 2002 WL 121204, *1 (Jan. 30, 2002). The instruction that the trial court gave in this case implicitly informed the jury that the evidence about Mr. Howard's other acts was admitted for only a limited purpose in that it told the jurors that the evidence could not be used "as evidence of the [d]efendant's character in order to show that he acted in conformity with that character." The court also affirmatively instructed the jury that the evidence could only be "considered by you to impeach the credibility of the [d]efendant or to prove motive, intent, opportunity, preparation, plan, absence of mistake or accident[,]" which were the limited purposes for which it was admitted. Upon review of the record, we conclude that Mr. Howard has failed to demonstrate that the trial court plainly erred when it instructed the jury about Mr. Howard's prior criminal acts. Mr. Howard's second assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE A JURY INSTRUCTION OF AGGRAVATED ASSAULT, AN INFERIOR OFFENSE [OF] THE OFFENSE OF FELONIOUS ASSAULT.

{¶21} Mr. Howard next argues that the trial court should have instructed the jury on aggravated assault, an inferior-degree offense of felonious assault. He contends that an aggravated assault instruction would have been consistent with the self-defense instruction that the court gave. He also argues that, even if the instructions are inherently inconsistent, he explicitly told the court that he wanted an aggravated assault instruction over a self-defense instruction.

{¶22} As noted previously, "[t]his Court reviews a trial court's decision to give or decline to give a particular jury instruction for an abuse of discretion under the facts and circumstances of the case." *Sanders*, 2009–Ohio–5537 at ¶ 45. The Revised Code's aggravated assault provision, Section 2903.12(A), provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * [c]ause serious physical harm * * *."

> The evidence "will be sufficient to entitle a defendant to an instruction on [aggravated assault] as an inferior degree of [felonious assault,] if under any reasonable view of the evidence, and when all of the evidence is construed in a light most favorable to the defendant, a reasonable jury could find that the defendant had established by a preponderance of the evidence the existence of one or both of the mitigating circumstances."

*State v. Bostick*, 9th Dist. Summit No. 25853, 2012-Ohio-5048, ¶6, quoting *State v. Rhodes*, 63 Ohio St.3d 613, 617-618 (1992).

{¶23} We conclude that the trial court correctly refused to instruct the jury on aggravated assault because Mr. Howard did not present any evidence that would support a

finding of serious provocation. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *State v. Deem*, 40 Ohio St.3d 205, 211 (1988). "In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Id*.

{¶24} According to Mr. Howard, when he turned off the television, Mr. Christian told him to turn it back on, then got up to do it himself. When Mr. Howard attempted to turn it back off, Mr. Christian "snatched me [on the arm] like he was going to manhandle me." It was not disputed that Mr. Christian is much larger than Mr. Howard, outweighing him by a substantial margin.

{¶25} Although Mr. Howard testified that he noticed that his arm was bleeding before he swung at Mr. Christian, Mr. Howard had no idea how his arm got cut. "Provocation must be 'sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" *State v. Mack*, 82 Ohio St.3d 198, 201 (1998), quoting *State v. Shane*, 63 Ohio St.3d 630, 635 (1992). We believe that being grabbed on the arm and experiencing a cut in the process would not arouse the passions of an ordinary man beyond the power of his control such that he would be aroused to use deadly force. In addition, there is no evidence that Mr. Howard "actually was under the influence of sudden passion or in a sudden fit of rage." *Shane* at 634. According to Mr. Howard, he swung at Mr. Christian simply "to get him back off of me" and denied that he was mad at Mr. Christian. The trial court, therefore, did not abuse its discretion when it denied Mr. Howard's request for a jury instruction on aggravated assault. Mr. Howard's third assignment of error is overruled.

III.

**{¶26}** The trial court did not improperly admit evidence regarding Mr. Howard's prior criminal offenses or improperly instruct the jury. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

WHITMORE, J.
CONCURS.

BELFANCE, P. J.
<u>DISSENTING.</u>

{¶27} I respectfully dissent from the judgment of the majority, as I would conclude that the other acts evidence was inadmissible under Evid.R. 404(B) and was not harmless.

{¶28} As an initial matter, we must be mindful that the Ohio Supreme Court has stated that, "[b]ecause R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." *State v. Broom*, 40 Ohio St.3d 277, 281-282 (1988). In determining whether other acts evidence is admissible under Evid.R. 404(B), courts conduct a three-step analysis. *State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19.

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*Williams* at ¶ 20.

{¶29} In the instant matter, the State asserted that Mr. Howard committed felonious assault by cutting Mr. Christian on the chin with a pocket knife during a dispute over the volume of the TV Mr. Christian was watching. There was no dispute that both men suffered serious physical harm during the altercation. Nor was there any dispute that the altercation was between Mr. Howard and Mr. Christian, who were also the only two witnesses of the assault. Mr. Howard's defense was based upon the notion that he acted in self-defense and/or to some extent accidentally cut Mr. Christian in the process of trying to get Mr. Christian off of himself.

**{¶30}** Ultimately, the State presented evidence of two other acts against Mr. Howard. One was an incident from 1994 during which Mr. Howard was accused of cutting a man across the chin with a box cutter and the second was an altercation in 2006 in which Mr. Howard was accused of cutting a man on the neck with a box cutter. In discussing the 2006 incident, the trial court found that evidence of that event was admissible to show intent or knowledge.[1]

**{¶31}** Assuming that the evidence was relevant, the issue in this case is whether it was admissible under the second and third prongs of the test set forth in *Williams*. The second step of the test requires the trial court to evaluate whether the evidence of another crime or act is being presented to show the bad character of the accused in order to show he acted in conformity with that bad character or whether the evidence is presented for a legitimate purpose. *See Williams* at ¶ 20. Under the circumstances, I strongly question whether evidence of Mr. Howard's prior assaults was presented for a legitimate purpose contemplated by Evid.R. 404(B). The State argued that the prior acts evidence was admissible to demonstrate not only Mr. Howard's intent and knowledge but also "his motive, his plan and any absence of mistake or accident." Ultimately, the trial court concluded that the 2006 incident was admissible to establish Mr. Howard's intent or knowledge. However, given the record in this case, it appears that the evidence was offered to show that Mr. Howard acted in conformity with his bad character.

---

[1] Only the 2004 incident was admitted in the State's case in chief. The trial court concluded that information related to the 1994 incident would only be admissible if Mr. Howard testified, which he did. While I acknowledge that Evid.R. 609 allows, under certain circumstances, the admission of evidence that the accused has been previously convicted of a crime, I cannot conclude that those circumstances are present. *See* Evid.R. 609(B); *see also State v. Wright,* 48 Ohio St.3d 5 (1990), syllabus.

{¶32}  As an initial matter, the notion that Mr. Howard's past crimes were necessary to show that Mr. Howard knew that the act of swiping a blade would probably result in serious harm is problematic given that Mr. Howard never asserted that he did not know that the act of swiping a blade in the manner he did was likely to cause serious physical harm.  In addition, the State's position lacks credibility in this case given that adults generally know that swiping someone with a sharp blade is likely to result in serious harm.  Even children are taught at a young age that they have to be careful when handling sharp objects because of the risk of injury to themselves or others.

{¶33}  Moreover, in the State's opening, it argued that, after hearing all the evidence, the jury would conclude that Mr. Howard "[wa]s nothing more than a dangerous man who when people don't submit to his will he will cut them in the face."  Further, it asserted the jury would find that, "when [Mr. Howard] gets in fights with people, as he did in 2006, [] he cuts people in the face."  During cross-examination of Mr. Howard, the State asked him if it was true that he had the habit of getting angry and cutting people in the face.  During closing argument, the prosecutor stated that the other acts evidence was introduced to "show his intent, to show his knowledge, to tell us what he was thinking * * * on July 22[], 2012."  It is difficult for me to conclude that the State was presenting this evidence to show anything other than Mr. Howard was the type of person who cut people in the face when he was angry and that he did it again in 2012.  In other words, the State was inviting the jury to make the precise leap of logic that Evid.R. 404(B) is aimed to prevent, namely that, because Mr. Howard had bad character and committed similar crimes in the past, he must have done so again.  Thus, under the circumstances of this case, I would conclude that the evidence was not offered for a legitimate purpose.

{¶34} Further, even if I were to assume that the evidence was relevant and was presented for a permissible purpose, I can only conclude that the evidence's "probative value [wa]s substantially outweighed by the danger of unfair prejudice[.]" Evid.R. 403(A). This evidence had limited probative value. As noted above, the average person would have knowledge that swinging a pocket knife at someone during a struggle could result in serious physical harm. However, even if the evidence had some probative value, it is outweighed by the danger of unfair prejudice. The only two eyewitnesses to the assault, Mr. Howard and Mr. Christian, gave competing versions as to what occurred. Thus, credibility of the witnesses was at the heart of the case before the jury. Mr. Howard acknowledged that he was in an altercation with Mr. Christian and that, in the course of the tussle during which Mr. Howard was defending himself, Mr. Christian was injured. Mr. Howard further stipulated that Mr. Christian suffered serious physical harm. Admission of this evidence in this case tempts the jury to find Mr. Howard not credible based solely on his prior bad acts, as opposed to doing so based upon the actual facts and circumstances of the case at hand. In addition, allowing testimony of prior acts such as this to demonstrate that a defendant had knowledge that his or her actions would cause serious physical harm allows the exceptions in Evid.R. 404(B) to swallow the rule which generally *prohibits* the admission of other acts evidence, given that in almost every case one could argue the prior bad act is evidence of knowledge and intent. For example, in a felonious assault with a firearm prosecution, the State could argue that evidence that a defendant shot and injured a person in the past would be admissible to demonstrate that the defendant knew shooting someone would cause serious physical harm. While this may sound ridiculous, this is a logical extension of the case before us. Accordingly, I can only conclude that Mr. Howard's prior bad acts should not have been admitted.

{¶35} Finally, given the importance Mr. Howard's credibility must have played in the jury's determination under circumstances where the victim and Mr. Howard were the sole witnesses to what transpired during the actual altercation, I cannot say that the trial court's improper admission of this evidence was harmless. Crim.R. 52(A). Accordingly, I would reverse the judgment of the trial court and remand the matter for a new trial. I respectfully dissent.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.